**LINDEMOOD et al. v. EVANS.**

No. 11210.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 18, 1942.

James S. Gregg, of Aransas Pass, and Baker, Botts, Andrews & Wharton and Radford Byerly, all of Houston, for appellants.

F. M. Bransford, of Fort Worth, for appellee.

MURRAY, Justice.

Frances C. Lindemood brought this suit against Mark Evans, Jr., seeking to recover by trespass to try title an undivided one-half interest in Farm Lot No. 16, in Block 217, Burton and Danforth Subdivision, adjoining the town of Aransas Pass, in Aransas County, Texas, and Lot No. 3, in Block 243, situated in the town of Aransas Pass, in San Patricio County, Texas.

The cause was submitted to a jury upon one special issue, to-wit: "Do you find from a preponderance of the evidence that the Defendant, Mark Evans, Jr., paid for the property in question entirely our of his own separate funds?" To which the jury answered "Yes."

Accordingly, judgment was rendered against Frances C. Lindemood and she has appealed.

Mark Evans, Jr., and Mrs. Anna L. Craddock were married on June 22, 1908, and lived together as man and wife until the death of Mrs. Anna L. Craddock Evans. The property in question was purchased and paid for during the existence of this marriage and will be presumed to be the community property of such husband and wife, unless shown to be otherwise by clear, satisfactory and convincing evidence. As was said in Chapman v. Allen, 15 Tex. 278, 283:

" * * * The presumption that property purchased during the marriage is community property is very cogent; and can only be repelled by clear and conclusive proof that it was [purchased] with the individual money or property of one of the partners. Where the property has not been preserved in specie or in kind, but, as in this case, has undergone mutations and changes, it is indispensable, to maintain its separate character, that it be clearly and indisputably traced and identified."

The evidence that the two lots in suit were purchased with money belonging to the separate estate of Mark Evans, Jr., is not clear, satisfactory and convincing, and the presumption of community must therefore prevail. Mayor v. Breeding, Tex.Civ.App., 24 S.W.2d 542; Schwethelm v. Schwethelm, Tex.Civ.App., 1 S. W.2d 911; Davis v. Duncan, Tex.Civ.App., 102 S.W.2d 287.

On January 29, 1909, Mark Evans, Jr., sold certain property to one C. T. Vivian and received therefor a cash consideration of $1,350. The property sold was the separate property of Mark Evans, Jr., and the $1,350 represented proceeds derived from a sale of separate property of Mark Evans, Jr. The weakness in appellee's case is he fails to show that the Aransas Pass property was paid for exclusively out of this $1,350. Only $978.67 of this $1,-350 was deposited in the Waggoner Bank & Trust Company. According to Evans, about $400 of this money was paid out as a down payment on property he purchased located on California Avenue in Fort Worth, Texas. It is not clear from his testimony whether or not he paid this amount out of the $1,350 before making the deposit in the Waggoner Bank. The evidence also shows that on one occasion $270.22 was transferred from this Waggoner Bank Account to his partnership account (Frazee and Evans Plumbers).

He purchased property in the Bells Addition, the deed reciting a cash consideration of $801.96. He testified this was not the true consideration but never did say what the true consideration was. After the purchase of these properties the Waggoner Bank Account showed a balance of only $22.68 on March 5, 1909. The lots in suit were paid for by monthly installments of $10 each. Most of these installments were paid after March 5, 1909. Evans explained this by saying that he transferred some of the money from the Waggoner Bank to his private account in the Texas State Bank of Fort Worth and then paid the monthly installments out of this account. It seems inescapable that when he transferred these funds to his private account they were commingled with community property. Why he should purchase property and pay for same by monthly installments of $10 each when he had his own separate money in the bank and intended to pay these installments out of such funds already on hand is not shown. Neither does he explain why some of these installments were permitted to become delinquent. Such vague and uncertain testimony is not sufficient to overcome the presumption that property purchased and paid for during coverture is community property.

The judgment of the trial court is reversed and the cause remanded.